Taliapebro, J.
This suit is brought on two promissory notes, falling due, respectively, in February and March, 1862. At maturity they were protested, and notices given. The controversy seems to be confined entirely to the note that fell due in March, the defendant, who is the payee and endorser, alleging that he was served with no legal^notice of protest. The plaintiff had judgment for the amount of both notes, and the defendant, Langhorn, appealed.
The notes were protested by different notaries. The notary who pro- . tested the note due in February, served the notice on Laughorn at his residence, in New Orleans. The other notary, upon making protest of the note due about the middle of March, served his notice by letter, addressed to Langhorn at New Orleans, and placed in the post-office of this city, and likewise by duplicate notice to the same party, delivered by the notary to J. M. Travis, at the office of Joseph B. Shannon & Oo. Bandall, the notary’s deputy, who served these notices, states in his testimony in the case, that “ he placed the notice in the post-office, because Mr. Langhorn could not be found,” and that “subsequently ascertaining that the headquarters of Mr. Langhorn was at the office of Joseph B. Shannon, a duplicate "notice for the same party was left at the office with Mr. Travis, as stated in the certificate of protest; that he made inquiries at various places of public resort for Mr. Langhorn, and could not ascertain where he could he seen; that he did not recollect particularly about making inquiry at to his residence. The only information he could get was, that Langhorn’s “headquarters” were at Shannon’s office; that he knew nothing of the business connections of Travis and Shannon; did not recollect whether or not he made inquiry of Travis where Langhorn *549 could be found, but recollected that Travis told him the notice would be' handed to Langhorn.
It is in proof that Langhorn had a residence in New Orleans, and was living on Washington street at the time the protest was made. It is shown also, that his name appears in the City Directory for the year previous, 1861.
Langhorn was a steamboat man, and witness stated that he made inquiry of various steamboat agents where Langhorn could be found; 'that he had no recollection who informed him where Mr. Langhorn’s headquarters were.
We cannot understand by the term “headquarters,” that the person sought to be rendered liable as endorser, had a fixed place of business in New Orleans. His occupation seems to have been that of captain of a, steamboat. His home, and the residence of himself and' family, are clearly shown to have been in New Orleans at the time the protest of the note in question was made. Service of notice, as we. have seen, was made upon him in the other case at his residence in the city a month before. Under the state of facts presented, we think, negatives the idea that any proper diligence was used to notify the defendant, and, it follows, that he is thereby released. 2 A. 16. 6 L. 744. 8 L. 171.
It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed as to the defendant Langhorn; that the plaintiff recover from the defendants, Joseph B. Shannon and Maurice Langhorn, in solido, the sum of one thousand six 'hundred and ninety dollars and seventy-eight cents, with five per cent, interest thereon, from the 9th of February, 1862, until paid; that the defendant, Maurice Langhorn, have judgment in his favor, as to the nóte for seventeen hundred and three dollars and eighteen cents, releasing ■him from all obligation to pay the same, the plaintiff and appellee to pay the costs of this appeal, and all other costs to be paid by the defendant.